UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALFREDO NUNEZ, *individually and on behalf of others similarly situated*, and JOSEPH TEJADA, *individually and on behalf of others similarly situated*,

                    Plaintiffs,

-v.-

EXECUTIVE LE SOLEIL NEW YORK LLC,

                    Defendant.

22 Civ. 4262 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

    Alfredo Nunez ("Nunez") and Joseph Tejada ("Tejada," and together with Nunez, "Plaintiffs") sued their former employer, Executive Le Soleil New York LLC ("Defendant"), for failing to pay its manual laborers with the frequency required by Section 191 of the New York Labor Law ("NYLL"). Plaintiffs bring untimely wage claims on behalf of themselves and a putative class of similarly situated employees. Defendant has moved to dismiss Plaintiffs' claims for lack of standing and to strike their class allegations. Because Plaintiffs satisfied their pleading burden on both fronts, the Court denies Defendant's motion.

## BACKGROUND[1]

### A. Factual Background

#### 1. Plaintiffs' Employment

    Defendant, a Delaware company, operates the Executive Hotel Le Soleil New York in midtown Manhattan ("Le Soleil"). (AC ¶¶ 1, 10). Defendant

---

[1] This Opinion draws its facts from the Amended Complaint (Dkt. #16 (the "AC")), the well-pleaded allegations of which are taken as true for the purposes of this Opinion.

employed Nunez as a bellhop/night auditor at Le Soleil from August 2015 until May 2016.  (*Id.* ¶ 7).  Similarly, Defendant employed Tejada as a bellhop at Le Soleil from April 2018 until March 2020.  (*Id.* ¶ 8).  Both men worked for Defendant in non-exempt, hourly roles.  (*Id.* ¶¶ 7-8).  Each spent more than 25% of their workdays performing physical tasks at Le Soleil, including carrying guests' luggage, opening the hotel door for guests, cleaning and vacuuming the hotel lobby, and delivering sundries to guest rooms.  (*Id.* ¶ 9).

Defendant paid Plaintiffs twice per month throughout their respective employments.  (AC ¶¶ 2, 9).  Plaintiffs allege that because they qualified as manual laborers under the NYLL, they were entitled to weekly, rather than bi-weekly, pay.  (*Id.* ¶¶ 1-3, 9).  *See also* NYLL § 191(1)(a) (specifying that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned" unless otherwise authorized by the Commissioner of the New York State Department of Labor).  They further allege that they "were time and again injured by Defendant's failure to pay them timely wages, inasmuch as Defendant's conduct routinely deprived them on a temporary basis of monies they were owed."  (*Id.* ¶ 9).

### 2. Class Allegations

Plaintiffs bring this action on behalf of a putative class of individuals employed by Defendant as manual laborers at Le Soleil from October 8, 2015,

---

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #21); to Plaintiffs' memorandum of law in opposition as "Pl. Opp." (Dkt. #24); and to Defendant's reply memorandum as "Def. Reply" (Dkt. #27).

to the present.  (AC ¶ 1; *see also id.* ¶ 12 (defining the putative class as "similarly situated employees who performed work for Defendant [in] non-exempt, hourly positions in capacities that required the[m] [to] perform physical tasks for more than 25% of their workdays")).  They believe this class to include hundreds of employees.  (*Id.* ¶ 13).  Plaintiffs allege that common questions of law and fact, including whether Defendant compensated its employees bi-weekly and whether that practice is lawful, predominate over any individual considerations.  (*Id.* ¶ 14).  Plaintiffs further maintain that their claims are typical of those of the putative class because all were "subject to Defendant's policies and willful practices of failing to compensate employees in compliance with applicable law."  (*Id.* ¶ 15).

**B.     Procedural Background**

Plaintiffs filed the initial complaint in this action on May 24, 2022.  (Dkt. #1).  The Court subsequently granted Defendant's motion for an extension of time to answer or otherwise respond to the complaint (Dkt. #9-10), and on July 22, 2022, Defendant filed a letter detailing the grounds for its intended motion to dismiss and to strike the class allegations (Dkt. #11).  Plaintiffs filed a responsive letter on July 27, 2022.  (Dkt. #12).  The Court held a conference on August 16, 2022, at which conference the parties discussed the anticipated motion.  Following the conference, the Court entered the parties' proposed schedule for briefing the motion.  (Dkt. #15).

In line with that schedule, Plaintiffs filed the Amended Complaint on September 16, 2022.  (Dkt. #16).  Defendants filed a motion to dismiss and

accompanying memorandum of law on October 21, 2022. (Dkt. #20-21). The Court granted Plaintiffs' request for additional time to file their opposition (Dkt. #22-23), and they filed such opposition on November 15, 2022 (Dkt. #24). The Court then granted Defendant's request for additional time to file its reply (Dkt. #25-26), and it filed such reply on December 2, 2022 (Dkt. #27). Plaintiffs filed notices informing the court of recently issued supplemental authorities on January 1, 2023, and April 18, 2023, respectively. (Dkt. #30-31). The Court now considers Defendant's fully briefed motion.

## DISCUSSION

**A. The Court Has Subject Matter Jurisdiction over Plaintiffs' Claims for Delayed Wages**

### 1. Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Daly* v. *Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In turn, the Constitution provides for federal jurisdiction only over those cases or controversies in which the plaintiff has a "personal stake" in the outcome. *TransUnion LLC* v. *Ramirez*, 141 S. Ct. 2190, 2203 (2021) (internal quotation marks and citation omitted).

In assessing a facial challenge to subject matter jurisdiction, the Court may consider only the allegations of the complaint and the exhibits attached to it. *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Although "[t]he burden of proving jurisdiction is on the party asserting it," *Robinson* v. *Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994), a party opposing a facial Rule 12(b)(1) motion bears "no evidentiary burden," *Carter*, 822 F.3d at 56, and will prevail if the complaint and its exhibits allege facts that "affirmatively and plausibly suggest" that the plaintiff has standing to sue, *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (*per curiam*). In making this determination, the Court must accept the complaint's allegations as true "and draw[] all reasonable inferences in favor of the plaintiff." *Carter*, 822 F.3d at 57 (internal quotation marks and citation omitted).

### 2. Plaintiffs Adequately Alleged Injury-in-Fact

Article III of the United States Constitution limits federal jurisdiction to only those disputes that meet the "irreducible constitutional minimum" of standing. *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing is thus a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975). A plaintiff has standing only if he or she suffered "a personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 90 (2013) (quoting *Allen* v. *Wright*, 468 U.S. 737, 751 (1984)). The party invoking federal

jurisdiction, here Plaintiffs, bears the burden of proof on each element of standing. *Spokeo, Inc.* v. *Robins,* 578 U.S. 330, 338 (2016). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

The instant motion concerns only the injury-in-fact component of standing. (*See* Def. Br. 2-4). To demonstrate injury in fact, a plaintiff must show the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal quotations omitted). A legislature may create a legally protected right by statute. *Strubel* v. *Comenity Bank,* 842 F.3d 181, 188 (2d Cir. 2016). But Article III's injury-in-fact requirement is not automatically satisfied by the existence of a statutory right and a corresponding private right of action. *Spokeo,* 578 U.S. at 341. The plaintiff must also show that he or she was concretely harmed by the defendant's statutory violation. *See id.* ("[A plaintiff] could not ... allege a bare procedural violation, ... and satisfy the injury-in-fact requirement of Article III."); *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing.").

This principle is not new. *See Hodgson* v. *Bowerbank*, 9 U.S. (5 Cranch) 303, 304 (1809) ("Turn to the article of the constitution of the United States, for the statute cannot extend the jurisdiction beyond the limits of the

constitution."). But the Supreme Court recently reaffirmed it in *TransUnion LLC* v. *Ramirez*, reminding courts that "an injury in law is not an injury in fact." 141 S. Ct. at 2205. To illustrate Article III's concrete harm requirement, *TransUnion* offered the example of two individuals, a Maine resident and a Hawaii resident, each hoping to sue a Maine factory for violations of a federal environmental law. *Id.* at 2205-06. The Maine resident, whose property was directly affected by the factory's unlawful pollution, could sue to redress that injury. *Id.* at 2205-06. But the Hawaii resident, whose interest in abating the nuisance was largely conceptual, lacked the personal stake in the litigation our Constitution requires. *Id.*

In Defendant's view, Plaintiffs lack standing because they failed to allege a concrete or personalized injury resulting from Defendant's alleged failure to pay them weekly. (Def. Br. 4). This Court considered and rejected an identical argument just last year in *Gillett* v. *Zara USA, Inc.*, No. 20 Civ. 3734 (KPF), 2022 WL 3285275 (S.D.N.Y. Aug. 10, 2022). The *Gillett* defendants moved to dismiss a similar NYLL Section 191 claim for untimely payment of wages for lack of standing. *Gillett*, 2022 WL 3285275, at *4-7. The Court found that the *Gillett* plaintiff's temporary deprivation of wages constituted a concrete, cognizable harm:

> Irrespective of the fact that [p]laintiff ultimately received the entire sum of wages he was owed, th[e] delay of payment, in and of itself, constitutes a concrete harm that suffices for purposes of Article III. This is because the "[t]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." *Caul* v. *Petco Animal*

7

>*Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sept. 27, 2021) (quoting *Porsch* v. *LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019)).  As the Seventh Circuit explained, albeit in a different context, "[e]very day that a sum of money is wrongfully withheld, its rightful owner loses the time value of the money." *Habitat Educ. Ctr.* v. *U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010); *see also Porsch*, 380 F. Supp. 3d at 424 ("It is a basic princip[le] of economics and accounting that a dollar today is worth more than a dollar tomorrow.").  This temporary withholding of money to which [p]laintiff was owed — an injury [p]laintiff purportedly suffered every pay period he worked for [d]efendants — is a concrete, economic harm.

*Id.* at *6.  The Court went on to note that *TransUnion* confirmed that monetary harms of this type satisfy Article III's injury requirement.  *Id.* at *6-7.

Myriad opinions, in this District and others, accord with *Gillett*.  *See, e.g.*, *Day* v. *Tractor Supply Co.*, No. 22 Civ. 489 (JLS) (MJR), 2022 WL 19078129, at *2-4 (W.D.N.Y. Dec. 1, 2022), *report and recommendation adopted*, 2023 WL 2560907 (W.D.N.Y. Mar. 17, 2023); *Espinal* v. *Sephora USA, Inc.*, No. 22 Civ. 3034 (PAE) (GWG), 2022 WL 16973328, at *3-4 (S.D.N.Y. Nov. 16, 2022), *report and recommendation adopted*, 2023 WL 2136392 (S.D.N.Y. Feb. 21, 2023); *Levy* v. *Endeavor Air Inc.*, — F. Supp. 3d —, No. 21 Civ. 4387 (ENV) (JRC), 2022 WL 16645829, at *2-4 (E.D.N.Y. Nov. 1, 2022); *Elhassa* v. *Hallmark Aviation Servs., L.P.*, No. 21 Civ. 9768 (LJL), 2022 WL 563264, at *2 (S.D.N.Y. Feb. 24, 2022); *Caul*, 2021 WL 4407856, at *4 (all determining that late payments confer standing for Section 191 claim); *see also Van* v. *LLR, Inc.*, 962 F.3d 1160, 1161, 1165 (9th Cir. 2020) ("[T]he temporary deprivation of money gives rise to an injury in fact for purposes of Article III standing[.]"); *MSPA*

8

*Claims 1, LLC* v. *Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) ("The inability to have and use money to which a party is entitled is a concrete injury."); *Dieffenbach* v. *Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) ("The plaintiffs have standing ... because unauthorized withdrawals from their accounts cause a loss (the time value of money) even when banks later restore the principal[.]").

Like the *Gillett* plaintiff and the Maine citizen in *TransUnion*'s hypothetical, Plaintiffs pleaded more than a "bare procedural violation." *See Spokeo*, 578 U.S. at 341. If their allegations are borne out, Defendant routinely paid half of Plaintiffs' wages a week late. (AC ¶¶ 2, 9). During those periods of deprivation, Plaintiffs could not spend, invest, or otherwise utilize funds that they earned and to which they were entitled under New York law. Unlike the Hawaii citizen, Plaintiffs were personally harmed by those temporary deprivations. They thus have alleged a concrete injury cognizable in federal court.

Defendant would require Plaintiffs to allege details about the money (or the time value thereof) that they lost as a result of the delayed wages. (Def. Br. 4). *Gillett* specifically rejected this argument. *Gillett*, 2022 WL 3285275, at *7 ("This Court does not read *TransUnion* or any other binding precedent to require a plaintiff to specify how he intended to take advantage of the time value of his wages if they had not been improperly withheld for a period of time."); *id.* at *6 ("Even without any additional facts about how he would have used his wages if he had received them in a timely fashion, [p]laintiff has

9

alleged a concrete harm resulting from [d]efendants' alleged violation of Section 191."); *see also Elhassa*, 2022 WL 563264, at *2 (declining to dismiss a Section 191 claim based on standing at the pleading stage "[e]ven if [p]laintiff's allegations currently are on the light side and do not contain detail on how the late payment specifically harmed her"). The out-of-district cases on which Defendant relies — *Rath* v. *Jo-Ann Stores*, No. 21 Civ. 791 (WMS), 2022 WL 3701163, at *7 (W.D.N.Y. Aug. 26, 2022), and *Rosario* v. *Icon Burger Acquisition LLC*, No. 21 Civ. 4313 (JS) (ST), 2022 WL 198503, at *3 (E.D.N.Y. Jan. 21, 2022) — are outliers in requiring more particularized allegations and are inconsistent with the familiar pleading standard. *See Espinal*, 2022 WL 16973328, at *4 ("[P]laintiffs need not describe the particularity of their alleged injury at length at the pleading stage, because 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" (quoting *Lujan*, 504 U.S. at 561)).

Defendant next attempts to distinguish *Gillett* because the plaintiff in that case brought underpayment claims in addition to a claim for untimely wages. (Def. Br. 3-4). In Defendant's view, the *Gillett* plaintiff had standing not because of his allegations regarding *late* payments, but because his "[a]llegations of repeatedly delayed *underpayments* make it plausible that [he] did in fact suffer the sort of injury that … may justify conferring Article III standing." (Def. Br. 4). Defendant is correct that there is no underpayment claim in this case. But that distinction is of no matter. "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp.*

10

v. *Cuno,* 547 U.S. 332, 335 (2006).  In other words, "*with respect to each asserted claim,* a plaintiff must always have suffered a distinct and palpable injury[.]'"  *Mahon* v. *Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (alteration adopted) (quoting *Gladstone Realtors* v. *Vill. of Bellwood,* 441 U.S. 91, 100 (1979)).  As such, the *Gillett* plaintiff's underpayment did not (and could not) be the basis for his standing to bring an untimely payment claim.  And *Gillett* is clear about the basis for its holding: The plaintiff had standing for his untimely payment claim because "th[e] delay of payment, in and of itself, constitutes a concrete harm[.]"  *Gillett*, 2022 WL 3285275, at *6.  Defendant's attempt to distinguish *Gillett* strains both *Gillett*'s plain holding and canonical principles of standing.

Because Plaintiffs alleged a harm that is "concrete and particularized," this case is properly the province of this federal court.  *See Lujan*, 504 U.S. at 560.  Defendant's motion to dismiss for lack of standing is denied.

**B.    The Court Denies Defendants' Motion to Strike the Class Allegations**

   **1.    Motions to Strike Pursuant to Federal Rule of Civil Procedure 12(f)**

Federal Rule of Civil Procedure 12(f) empowers courts to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter" *sua sponte* or upon a party's motion.  Fed. R. Civ. P. 12(f).  Motions to strike are not to be granted "unless there is a strong reason for so doing."  *Nungesser* v. *Columbia Univ.*, No. 15 Civ. 3216 (GHW), 2017 WL 1102661, at *1 (S.D.N.Y. Mar. 23, 2017) (internal quotation marks omitted).  This is particularly true for motions to strike class allegations, which are generally "viewed with disfavor

11

and infrequently granted," *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003), because they "require[] a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification," *Blagman* v. *Apple Inc.*, No. 12 Civ. 5453 (ALC) (JCF), 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013) (quoting *Calibuso* v. *Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012)).  As a result, "[d]istrict courts frequently have deferred the Rule 23 determination until the class certification stage, after the development of a 'more complete factual record.'" *Emilio* v. *Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 515 (S.D.N.Y. 2014) (quoting *Mazzola* v. *Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012)).  "Such a motion, however, may be entertained if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear."  *Talarico* v. *Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 166 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).

### 2. Defendant's Motion to Strike the Class Allegations Is Premature

Federal Rule of Civil Procedure 23(b)(3) permits claims to proceed on a class-wide basis where "questions of law or fact common to class members predominate over any questions affecting only individual members, and … a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Class certification also requires satisfaction of four preconditions defined in Rule 23(a): (i) the class

must be "so numerous that joinder of all members is impracticable"; (ii) there must be "questions of law or fact common to the class"; and the class representatives must (iii) have claims typical of the class claims and (iv) be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Plaintiffs allege a Section 191 claim on behalf of a putative class of "similarly situated employees who performed work for Defendant [in] non-exempt, hourly positions in capacities that required the[m] [to] perform physical tasks for more than 25% of their workdays." (AC ¶ 12). Defendant asks the Court to strike the Amended Complaint's class allegations "because they merely recite the prerequisites for bringing a class action but do not include any facts to support the allegation that Plaintiffs' proposed class even meet[s] the definition of a 'manual worker' under the NYLL." (Def. Br. 6). More specifically, Defendant is concerned that determining which Le Soleil employees are manual workers (and thus part of the putative class) will require individualized determinations that necessarily preclude class certification. (*Id.* at 7-8). Plaintiffs respond that such a ruling would be premature because it would require consideration of the commonality and typicality of their claims, thereby duplicating the Rule 23 analysis. (Pl. Opp. 9-15).

As noted, a motion to strike class allegations may be granted only "if the inquiry would not mirror the class certification inquiry and if the resolution of the motion is clear." *Talarico*, 367 F. Supp. 3d at 167. Here, Defendant's arguments are properly made and resolved at the class certification stage.

13

Defendant's concern that individual issues may predominate over questions common to the class is "paradigmatically [a concern] to be litigated at class certification — with the possible outcomes including certification, non-certification, or certification of narrowed or subclass(es), tailored to match unifying features of the plaintiffs therein."  *Gill* v. *Nat'l Football League*, No. 21 Civ. 1032 (PAE), 2021 WL 5087900, at *8 (S.D.N.Y. Nov. 2, 2021); *see also Haley* v. *Tchrs. Ins. & Annuity Assoc. of Am.*, 377 F. Supp. 3d 250, 273 (S.D.N.Y. 2019); *Farina* v. *Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 220-21 (S.D.N.Y. 2019); *Talarico*, 367 F. Supp. at 172-74 (all denying as premature motions to strike class claims based on lack of typicality and commonality).  It is not surprising, then, that the cases on which Defendant primarily relies for its commonality concerns are class certification rulings.  *See, e.g., Royal Park Invs. SA/NV* v. *Wells Fargo Bank, N.A.*, No. 14 Civ. 9764 (KPF) (SN), 2018 WL 1831850, at *4-6 (S.D.N.Y. Apr. 17, 2018); *Desilva* v. *North Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 329 (E.D.N.Y. 2014); *Luo* v. *Panarium Kissena Inc.*, No. 15 Civ. 3642 (WFK) (ST), 2020 WL 9456895, at *9 (E.D.N.Y. Sept. 16, 2020), *report and recommendation adopted*, 2021 WL 1259621 (E.D.N.Y. Apr. 6, 2021).

The Court may ultimately agree with Defendant that determining which Le Soleil employees qualify as manual workers under the NYLL requires an individualized inquiry into each employee's job title and duties that is incompatible with Rule 23's commonality and typicality requirements.  But it will not do so on the limited record before it today.  If Defendant believes that

14

information unearthed in discovery supports its position, it may renew its arguments at the class certification stage. But at this time, Defendant's motion to strike is denied and this case may proceed as a putative class action.

## CONCLUSION

Because Plaintiffs alleged cognizable injuries and adequately alleged a class claim, Defendant's motion is DENIED in full. Defendant shall file an answer to the Amended Complaint on or before **May 31, 2023**. Additionally, on or before **June 14, 2023**, the parties are ORDERED to meet and confer and file a joint letter indicating whether they wish to participate in the Southern District's mediation program or a settlement conference before a magistrate judge. If the parties are not interested in alternative dispute resolution and wish to proceed directly to discovery, they shall include with their joint letter a proposed case management plan.

The Clerk of Court is directed to terminate the motion at docket entry 20.

SO ORDERED.

Dated:   May 9, 2023
         New York, New York

                                              _____
                                              KATHERINE POLK FAILLA
                                              United States District Judge